843 So.2d 555 (2003)
Albert P. WOOD, Jr. and Lucy Wood, Plaintiffs-Appellees,
v.
Lamar SPILLERS, et al, Defendants-Appellants.
Albert P. Wood, Jr. and Lucy Wood, Plaintiffs-Appellees,
v.
Centurytel, Inc., et al, Defendants-Appellants.
Nos. 37,087-CA, 37,088-CA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
Rehearing Denied May 8, 2003.
*556 The Boles Law Firm, by Michael L. DuBos, P. Herman Wessels, for Defendants-Appellants, CenturyTel, Inc. and American Motorists Ins. Co.
Johnson, Stiltner & Rahman, by Patricia J. Delpit, for Intervenor-Appellee, La. Workers' Compensation Corp.
Dollar Laird, by Johnny E. Dollar, for Plaintiffs-Appellees, Albert P. Wood, Jr. and Lucy Wood.
Nelson, Zentner, Sartor & Snellings, by David H. Nelson, for Defendants-Appellees, Lamar Spillers and Steve Sowers.
Before STEWART, PEATROSS and DREW, JJ.
STEWART, J.
CenturyTel of Northwest Louisiana, Inc., ("CenturyTel"), the defendant herein, appeals a jury verdict awarding damages to the plaintiff, Albert P. Wood, Jr., for injuries he sustained when a telephone cable dropped onto the vehicle he was driving. In two assignments of error, CenturyTel asserts that the jury verdict should be reversed because the evidence does not support a finding that it was negligent, and in the alternative, that an award for future medical expenses should be reversed because there is no evidence to support this award. Because we find the jury's finding of negligence to be manifestly erroneous, we hereby reverse the judgment against CenturyTel.

*557 FACTS
On May 18, 1999, Albert P. Wood, Jr., was driving a tractor/trailer rig with an attached flatbed trailer in an easterly direction along I-20 in Lincoln Parish. As Wood proceeded from under the Choudrant overpass, the front of his vehicle was struck by a telephone cable which suddenly dropped to a height of six feet. The impact caused Wood to lose control of his vehicle and veer off the road into a line of trees. He was trapped in his vehicle and had to be removed by rescue workers. He sustained injuries to his left hand and arm. Earlier that morning, Wood passed the same area without incident, and just prior to the accident, he observed an 18-wheeler ahead of him clear the area without encountering any obstruction.
The cable which struck Wood's vehicle was part of a system that had been constructed in 1987 to provide telephone and internet dial-up services to the Choudrant area. An engineering firm designed and supervised the construction, then the Rural Electric Association, a federal agency now known as the Rural Utility Services, inspected the system before it was put into service by CenturyTel. The cable weighed approximately 996 pounds and spanned 332 feet across I-20. It was supported by a north pole measuring 8 inches in diameter and a south pole measuring 10 inches in diameter. Each pole was driven 8 feet into the ground. In addition, each pole was anchored by a guy wire connected to the top of the pole by a "through bolt" and secured to the ground by a buried anchor rod assembly. The supporting guy wire was positioned at a 45 degree angle to the pole. The anchor rod assembly consisted to two 10 foot sections of pipe joined at a threaded collar and screwed into the ground. Guy Middleton, CenturyTel's area supervisor, testified that a failure occurred at the coupling of the two segments of pipe underground. The top segment was pulled out from underground, the through bolt connecting the guy wire to the north pole ripped straight out the top of the pole, and the top half of the south pole split and fell to the ground.
Alleging theories of negligence and strict liability, Wood filed suit against CenturyTel.[1] The negligence theory was based on CenturyTel's failure to properly inspect, maintain, or repair its telephone cable lines.
Wood also filed suit against Lamar Spillers and Steve Sowers. Spillers owned property north of I-20 near where the north pole and guy wire assembly were located. On the morning of the accident, Spillers and Sowers, who worked for Spillers, had been bushhogging the area around the north pole and guy wire assembly. Wood alleged that either Spillers or Sowers struck the guy wire assembly or pole while bushhogging. Both denied doing so at trial. Spillers also testified that the area around the north pole and anchor rod assembly was sometimes wet and that the pole had a slight lean, which he surmised was due to its location and the fact that it "had a load on it." However, Spillers had not observed any change in the pole's lean over the years.
The jury determined that neither Spillers nor Sowers was negligent and rejected Wood's claims against them. The jury also rejected the theory of strict liability against CenturyTel upon finding no defective or unreasonably dangerous condition in CenturyTel's installations. However, the jury found CenturyTel to have been *558 negligent, assessed all the fault against it, and awarded damages totaling $150,633.
CenturyTel filed a motion for judgment notwithstanding the verdict seeking to overturn the jury verdict in toto, or in the alternative, that portion awarding future medical expenses. The trial court denied the motion. On appeal, CenturyTel assigns as error the jury's finding of negligence and the award of future medical expenses.

DISCUSSION
A jury's factual findings may not be set aside on appeal unless such findings are manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); White v. Wal-Mart Stores, Inc., 32,621 (La.App.2d Cir.3/3/00), 753 So.2d 995, writ denied, XXXX-XXXX La.6/23/00), 765 So.2d 1041. To reverse the jury's factual findings, an appellate court must view the record in its entirety and find that the record establishes that no reasonable factual basis exists for the jury's findings and that such findings are manifestly erroneous or clearly wrong. Stobart, supra. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. Id. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
Our law provides that every act of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. This obligation encompasses acts of negligence. La. C.C. art. 2316. Whether a defendant is liable for negligent conduct is analyzed by application of the duty/risk analysis. Harris v. Godwin, 28,245 (La.App.2d Cir.4/8/96), 671 So.2d 1278. The duty/risk analysis consists of the following four inquiries:
1. Whether the defendant had a duty to conform his conduct to a specific standard.
2. Whether the defendant breached this duty because he failed to conform his conduct to the appropriate standard.
3. Whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries.
4. Whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries.
Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Colgate v. Mughal Brothers, Inc., 36,754 (La.App.2d Cir.1/29/03), 836 So.2d 1229; Harris v. Godwin, supra. All four inquiries must be answered in the affirmative for the defendant to be found negligent and determined liable for the plaintiff's damages. Colgate v. Mughal Brothers, Inc., supra; Harris v. Godwin, supra.
The plaintiff who alleges negligence has the burden of proving his case by a preponderance of the evidence. A preponderance of the evidence exists when the direct and circumstantial evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Colgate v. Mughal Brothers, Inc., supra; Aetna Life and Cas. Co. v. Solloway, 25,462 (La.App.2d Cir.1/19/94), 630 So.2d 1353, writ denied, 94-0575 (La.4/22/94), 637 So.2d 162.
Wood sought to prove that CenturyTel was liable either because of negligence in failing to inspect, maintain, or repair its telephone cable lines or because of strict liability under La. C.C. arts. 2317 and 2317.1, which pertains to damage occasioned by some defect in the cable installation. The jury rejected the claims under La. C.C. arts. 2317 and 2317.1 when they found no defect or unreasonably dangerous condition in the cable installation. Wood did not appeal the jury's determination as *559 to his claims under La. C.C. arts. 2317 and 2317.1. As such, only the jury's finding of negligence is before this court pursuant to the assignment of error asserted by CenturyTel.
CenturyTel argues that there is no factual basis in the record to support a finding of negligence. It contends that the jury's finding of no defect or unreasonably dangerous condition precludes a finding of negligence on the basis of a failure to maintain, inspect, or repair the cable installation. In the absence of some defect, there is no causal connection between the failure to inspect, maintain, or repair and the incident which injured Wood.
In response, Wood argues that the jury's finding is supported by the evidence which shows that CenturyTel failed to inspect its installation in the years preceding this accident and this failure to inspect was negligent. Wood argues that failure to inspect was negligent because the installation was located in a wet area as evidenced by the presence of rust on the segment of pipe buried underground, and because the north pole had been leaning toward the interstate over the years as noted by Lamar Spillers. Wood contends that the jury drew upon its ordinary life experiences to conclude that a cable weighing almost 1,000 pounds does not suddenly drop in the absence of negligence, that CenturyTel was the party responsible for the cable installation, and that CenturyTel is best able to explain how the incident occurred. Wood argues on appeal that the jury applied the doctrine of res ipsa loquitur to reach the verdict.
We do not find res ipsa loquitur applicable in this instance. Res ipsa loquitur is a rule of circumstantial evidence by which the defendant's negligence is inferred where the facts indicate this to be the probable cause of the injury and where there is an absence of other plausible explanations by credible witnesses. Cangelosi v. Our Lady of the Lake Med. Ctr., 564 So.2d 654 (La.1989); Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (La.1972). Application of res ipsa loquitur requires the plaintiff to sufficiently exclude the inference of his own responsibility or the responsibility of others, beside the defendant's, in causing the accident. Cangelosi, supra; Gautreaux v. W.W. Rowland Trucking Co., Inc., 99-1002 (La. App. 5th Cir.2/29/00), 757 So.2d 87, writ denied, XXXX-XXXX (La.5/12/00), 761 So.2d 1291. Wood did not base his case at trial on this doctrine. He did not request instruction to the jury on application of res ipsa loquitur, and the jury was not instructed on such. Also, Wood argued that parties other than CenturyTel may have been responsible for causing the accident. The possibility that either Sowers or Spillers hit the north pole or guy wire while bushhogging was presented at trial as an equally plausible explanation for what may have occurred. These factors preclude application of the res ipsa loquitur doctrine on appeal as an explanation of the jury's verdict.
Wood's negligence theory was based on CenturyTel's alleged failure to inspect, maintain, or repair the cable installation. The evidence establishes that CenturyTel did not have a specific policy for inspecting the cable installation. However, Guy Middleton, the area supervisor for CenturyTel, explained that he supervised thirteen men and that there was an ongoing practice to visually inspect and provide maintenance as needed when problems were observed. Middleton testified that he passed the area where the incident occurred on an almost daily basis and that he never observed any problem with the cable. He also testified that he had measured the height of the cable a couple of years prior to the accident in preparation for a house move and *560 that it was 22 feet over the interstate. Moreover, Middleton explained that because it appeared a failure occurred in the portion of the guy wire assembly buried underground, an inspection would have not have led to the discovery of any underground problem. Middleton did not know of any utility company which dug up buried anchor assembly systems for purposes of regular inspections.
Even if we were to conclude that CenturyTel had a duty to inspect, maintain, and repair its cable installations, the record does not establish by a preponderance of the evidence that CenturyTel either breached this duty or that any breach caused the injury that occurred. No testimony was offered by Wood to show that CenturyTel's regular practice, as described by Middleton, was substandard with regard to inspections and maintenance of these cable installations. Instead, Wood relies on testimony indicating that the north and south poles were different sizes, that the north pole leaned slightly toward the interstate, that the north pole was located in an area that was sometimes wet, and that there was rust on the pipe buried underground as part of the north pole's anchor rod assembly to prove that a problem existed and that CenturyTel failed to find it and correct it. Reliance on such evidence to prove negligence presupposes that there was some defect which caused the accident and that CenturyTel could have discovered and corrected this defect had it exercised reasonable care by inspecting the installation. However, this supposition was rejected by the jury when they denied Wood's strict liability claims.
In Armstead v. Central Louisiana Electric Company, Inc., 308 So.2d 870 (La. App. 3d Cir.1975), a similar situation was presented. Armstead was injured when a vehicle in which he was riding struck a guy line that obstructed the path. The guy line sagged across the road when a rotten pole broke during normal weather conditions. Another contributing factor was that an unknown third person had detached guy lines connected to the rotten pole sometime prior to the accident. Two utility companies were found to have been negligent for failing to inspect, to discover these defects, and to repair the defects which caused the accident. The court concluded that the rotten pole and disconnected guy wires caused the pole to collapse and the line to sag across the road, thus creating an unreasonable risk of harm to passing motorists.
While the record in Armstead, supra, established specific defects which caused the accident, the record in the case before us does not. Neither the north pole nor the south pole was shown to be rotten. Neither the slight lean in the north pole nor the location of this pole in an area that was sometimes wet was shown either to have presented an unreasonably dangerous condition that should have been detected by an inspection or to have caused the accident. The negligence of the utility companies in Armstead, supra, was based on there being defects which were shown to have caused the accident and which could have been found and repaired if there had been an inspection. In the case before us, there was no such showing.
In Joseph v. Entergy, 2000-2213 (La. App. 4th Cir.2/13/02), 811 So.2d 54, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 846, Entergy was found liable under the theory of negligence for injuries sustained by the plaintiff when a corroded 626 pound metal light standard fell during a storm. There was expert testimony that severe corrosion contributed to the light standard giving way during the storm. The court found that Entergy had both a public and contractual duty to maintain the light standard so as to ensure public safety. *561 The court further found that Entergy breached its duty by not maintaining the light standard and by allowing it to go unpainted for several years during which time the corrosion developed to such an extent as to pose a danger to the public. Moreover, Entergy had notice of problems with the light standard, particularly reports that it was in need of paint and repair.
In the instant case, there was no showing that CenturyTel had notice of any problems with its cable installation. Most importantly, there was no expert testimony to show that any of the alleged problems with the cable installationthe location of the north pole in an area that was sometimes wet, the presence of rust on the underground segments of pipe that made up the anchor rod assembly, the slight lean of the north pole, or the different diameters of the north and south poles caused the incident which resulted in injury to Wood. Wood argues that the jury could reasonably conclude from this evidence that CenturyTel was negligent in failing to inspect its installation and in thereby allowing corrosion to develop to such an extent that the leaning pole gave way causing the cable to suddenly drop. This conclusion can only be reached through surmises and speculation, which are insufficient to prove negligence by a preponderance of the evidence. See Colgate v. Mughal Brothers, Inc., supra; Cangiano v. Forte Hotels, Inc., 2000-40 (La.App. 5th Cir.10/31/00), 772 So.2d 879, writ denied, XXXX-XXXX (La.01/26/01), 782 So.2d 636; Leger v. Citron Ford, Inc., 589 So.2d 23 (La.App. 1st Cir.1991).
Upon our review of this record, we do not find that Wood met his burden or proving negligence by a preponderance of the evidence. The jury's finding was manifestly erroneous. This is not an instance of there being two permissible views of the evidence. Rather, the evidence presented at trial does not support the view that CenturyTel was negligent due to its failure to inspect, maintain, or repair its cable installation. We must, under these circumstances, reverse the jury verdict and judgment rendered in accordance therewith. The assignment of error pertaining to the award of future medical expenses is rendered moot by reversal of the verdict.

CONCLUSION
For the reasons mentioned, we hereby reverse the jury verdict and judgment of the trial court awarding damages to Albert P. Wood, Jr. Costs are assessed to the appellee.
REVERSED.
DREW, J., concurs with written reasons.
DREW, J., concurring:
This factual scenario waddles and quacks like strict liability, an issue not before us. I must concur in this harsh result which requires Mr. Wood (and his compensation carrier) to unfairly bear the entire burden of an accident for which he was blameless.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, PEATROSS, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] Wood's petition erroneously referred to CenturyTel of Northwest Louisiana, Inc., and its insurer, American Motorists Insurance Company as CenturyTel, Inc., and Kemper Insurance Companies.